SAN MILLÁN, PETITIONER AND APPELLANT, v. MUNICIPAL ASSEMBLY OF ARECIBO, RESPONDENT AND APPELLEE.

## APPEAL from the District Court of Arecibo in Certiorari Proceedings.

### No. 3073.—Decided July 19, 1923.

CERTIORARI—AGGRIEVED PARTY—MUNICIPAL ASSEMBLY—RIGHT OF ACTION. —The petitioner in this case was elected Commissioner of Public Service, Police and Prisons by a vote of seven to six of the members of the Municipal Assembly. It was discovered later that one of the assemblymen was disqualified because he was an alien. Subsequently the assembly met and declared the election annulled and the office vacant, and elected another person. The petitioner maintained that he was never lawfully removed and continued in the active discharge of his duties. *Held:* That the petitioner is an aggrieved party with the right to a review as such by certiorari, under section 65 of the Municipal Law, of the action of the Municipal Assembly in declaring his election annulled.

ID.—When the Legislature has enacted a special certiorari statute like section 65 of the Municipal Law of 1911, a person aggrieved by an act of a municipal assembly must resort to that statute and not to the general principles of certiorari.

ID.—MUNICIPAL ASSEMBLY—DISQUALIFICATION—DE FACTO OFFICER.—If after a member of a municipal assembly has been elected and takes office it is ascertained that he is disqualified because he is not an American citizen, the act of the assembly in which he took part are valid, especially if his election was not challenged, for the reason that before his disqualification was discovered he was a *de facto* officer.

The facts are stated in the opinion.

*Mr. R. Rivera Zayas* for the appellant.

*Mr. J. Texidor* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The theory of the court below and of the appellee is that when a municipal assembly with the right of election declares an election void the person *prima facie* elected, if he retains his posts and insists that he has not been legally removed or deprived of office, is not prejudiced by the action, vote or determination taken by the assembly in annulling or attempting to annul the election. We find no authority and the parties have cited us to none for determining exactly at what point a man is removed from office. If the law provides that a man may not be removed, for example, without notice

and hearing and the appointing power removes him without either, the removal is void and the person attempted to be removed legally still has title to the office. Hence when the courts issue a mandamus to restore a man to his office they can not be declaring or creating the position. They are removing obstacles to the exercise of the office. They are declaring the title to exist.

In this case the Municipal Assembly of Arecibo, with the right of election of various commissioners, declared that the commissioner known as the mayor had not been duly elected; that his election was void, and they proceeded to elect another person. It is perfectly true that petitioner in the court below maintained that he continued to exercise his office actively and that he had never been legally removed, but the Municipal Assembly, under an alleged color of authority or with or without such authority, declared the office vacant. Every resultant act of the petitioner would be open to attack; his subordinates might refuse to obey his orders; the auditor might refuse to pass his accounts, and the public be thrown into doubt and confusion. The difference between a man who leaves his office and goes out upon the street upon the orders or action of a supposed superior board or person and one who defiantly sits at his desk asserting his right does not seriously affect the fundamental question, the object of review, namely, has the person sought to be removed a good title? What the opposing force or forces in any case have done is to cast a cloud upon the title. The title itself is not destroyed, but the exercise of it interrupted. One whose title is thus cast in doubt has had rights prejudiced or infringed within the meaning of section 65 (*a*) of the Act No. 85 of 1919, Laws of that year, page 720, under the head of "Judicial Remedies" as follows:

Section 65. That on motion of the aggrieved party the court of justice shall have jurisdiction—(*a*) To annul or review by writ of

certiorari any legislative or administrative act of the municipal assembly, council of administration or commissioners, which infringes the constitutional rights of the complainant or which is contrary to the Organic Act or the laws of Porto Rico.''

In this case the rights of the petitioner arose under the same act known as the Municipal Law, provided he had been duly elected mayor thereunder.

The appellees also maintain that certiorari does not lie and they base their contention on the general scope of the writ of certiorari. We have decided several times that when the Legislature has passed a special law giving a citizen a right of action, recourse must be had to that act and not to the general principles of certiorari. The definition, *supra,* of section 65 (*a*) is broad enough to cover this case.

The principal question in this case is whether there was a due election, the right to vote of one of the assemblymen who took part in the election being challenged.

Appellees have made some comment in their brief on the right to raise by collateral attack a question of whether a person is an officer *de facto,* but it should be remembered that the petitioner is making no attack on the existence of any office. On the contrary, petitioner is seeking to maintain not only his own due election, but the *de facto* right of the alleged municipal councilman who voted for petitioner. There is no attack.

The Municipal Assembly of Arecibo met to name a mayor. The petitioner nominally was elected by a vote of seven to six. Thereafter it was discovered that one of the voting assemblymen was not a citizen of the United States and hence under the law had no right to be elected to the council. Subsequently there was a meeting of the said assembly, the election of the mayor was declared annulled, his position vacant and a successor elected in his place. The appellant maintains that the meeting wherein his election was sought to be

annulled was called illegally and also maintains that the disqualified member was an officer *de facto* making the election of the mayor valid. Incidentally petitioner maintains that as the vote was secret there was no way of ascertaining for whom the disqualified member voted and therefore no ascertainable ground for annulling the mayor's election. It was expressly conceded in the final vote of the assembly that the vote of the disqualified member could not be known.

The alleged disqualified assemblyman was elected in the past elections in the same manner as his associates. After the election of the mayor it was discovered that the assemblyman in question was not an American citizen but a Spaniard. In how many other acts or resolutions of the assembly he intervened is not stated. The following citation from 22 R. C. L. 588, is apt.

"Lord Ellenborough has defined an officer *de facto* as one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law, and this definition has been quoted with approval in many cases. Another and a more comprehensive definition is as follows: A person is a *de facto* officer where the duties of the office are exercised: 'First.—Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be. Second.—Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement or condition, as to take an oath, give a bond or the like. Third.—Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public. Fourth.—Under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such.' And this has been widely accepted."

This citation is supported by *Wendt* v. *Berry,* Ann. Case 1915 C, 493, citing other cases; *Howard* v. *Burke,* 140 A. S.

R. 159, and elaborate note on page 171. See also *Ex Parte Dones,* 10 P. R. R. 170, *Hussey* v. *Smith,* 99 U. S. 20, *Ball* v. *United States,* 140 U. S. 118, on the rights of *de facto* officers. Also 19 R. C. L. 886–887. Under these authorities we have no doubt that the acts of the disqualified assemblyman, especially as his election was not challenged at the time, were valid as the acts of an officer *de facto.*

·, We have some doubt with the appellant whether the call for the extraordinary session was legal for the purpose of the destitution of the petitioner, but we need not specifically decide the matter.

Likewise, we do not see how the vote of the disqualified assemblyman could be ascertained, and we are inclined to think that the burden was on the challengers to show the vote of the disqualified member and if this showing was impossible then the election should stand. ·

We have doubts too whether the assembly had any right to annul the election. Under the law the assembly has a right to remove after notice and a hearing, but the right of the assembly to annul an election as· such is not clearly outlined among the faculties of an assembly. Something like a writ of *quo warranto* would seem to be the appropriate proceeding to test the validity of an election.

The judgment must be reversed and the resolution of the Municipal Council of Arecibo annulling the election of Rafael San Millán as commissioner of public service, police and prisons, must itself be annulled, and annulled as well any other orders of the council interfering with the due exercise of the office of said commissioner.

*Reversed.*

Chief Justice Del Toro and Justices Aldrey, Hutchison and Franco Soto concurred.